# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

THE SAMUELS GROUP, INC.,

        Plaintiff,

vs.

HATCH GRADING &
CONTRACTING, INC.,

        Defendant.

No. 09-CV-2058-LRR

**ORDER**

---

## *TABLE OF CONTENTS*

*I.*     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

*II.*    *FACTUAL AND PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . **2**

    *A.*    *Players* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
    *B.*    *Project* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
    *C.*    *Initial State Proceedings* . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
    *D.*    *Arbitration* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
    *E.*    *Subsequent State Proceedings* . . . . . . . . . . . . . . . . . . . . . . **6**
    *F.*    *Instant Action* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

*III.*   *SUBJECT MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . **7**

*IV.*   *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

    *A.*    **Colorado River** *Abstention* . . . . . . . . . . . . . . . . . . . . . . . **7**
    *B.*    *Parallel Proceedings* . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**
        *1.*    *Samuels's arguments* . . . . . . . . . . . . . . . . . . . . . . . **10**
        *2.*    *Hatch's arguments* . . . . . . . . . . . . . . . . . . . . . . . . **11**
        *3.*    *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
            *a.*    *State Court treated Samuels as a party* . . . . . . . . . . **12**
            *b.*    *Samuels's conduct suggests it is a party* . . . . . . . . . **14**
            *c.*    *Federal plaintiff need not always be a party*
                 *to the state proceedings* . . . . . . . . . . . . . . . . . . . **14**
            *d.*    *Impact of "stayed" State Proceedings* . . . . . . . . . . . **15**
            *e.*    *Governing law* . . . . . . . . . . . . . . . . . . . . . . . . . . **16**

     *f.*  *Issues are parallel* . . . . . . . . . . . . . . . . . . . . . . . *17*
    **4.**  **Summary** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*
  *C.*  **Colorado River** *Factors* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*
    **1.**  *Jurisdiction over a res* . . . . . . . . . . . . . . . . . . . . . . . . *18*
    **2.**  *Inconvenience of the federal forum* . . . . . . . . . . . . . . . . . *19*
    **3.**  *Threat of piecemeal litigation* . . . . . . . . . . . . . . . . . . . . *19*
    **4.**  *Priority* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *20*
    **5.**  *Controlling law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *21*
    **6.**  *Protection of Samuels's rights* . . . . . . . . . . . . . . . . . . *22*
    **7.**  *Additional considerations* . . . . . . . . . . . . . . . . . . . . . . . *22*
  *D.*  *Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *24*
  *E.*  *Dismissal or Stay* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *24*

*V.*  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *25*

## I. INTRODUCTION

The matter before the court is Defendant Hatch Grading & Contracting, Inc.'s "Motion to Dismiss (Abstain)" ("Motion") (docket no. 3).

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Players

Plaintiff The Samuels Group, Inc. ("Samuels") is a Wisconsin corporation with its principal place of business in Wausau, Wisconsin. Defendant Hatch Grading & Contracting, Inc. ("Hatch") is an Iowa corporation with its principal place of business in Dysart, Iowa. Alta Vista Properties, LC ("Alta Vista") owns certain real property in Parkersburg, Iowa.

### B. Project

In 2007, Alta Vista and Samuels entered into a contract. Pursuant to the contract, Samuels agreed to design and build the Iowa Senior Housing Project ("Project") on Alta Vista's property in Parkersburg. Samuels, in turn, contracted with Hatch to perform excavation work for the Project.

On May 25, 2008, a tornado struck Parkersburg. The tornado destroyed the

parties' work on the Project. When the tornado struck, neither Samuels nor Hatch had completed their work on the Project.

### C. *Initial State Proceedings*

On July 15, 2008, Hatch filed a mechanic's lien on Alta Vista's property. On October 21, 2008, Hatch filed a petition to foreclose its mechanic's lien ("Petition to Foreclose") in the Iowa District Court for Butler County ("State Court"), case no. EQCV020017,[1] against Alta Vista, Samuels and First State Bank. Hatch claimed that Alta Vista and Samuels owed it $120,280.89 for labor and materials that it expended on the Project. Throughout the State Proceedings, Alta Vista and Samuels were represented by the same counsel, Simmons Perrine Moyer Bergman, PLC, whom also represents Samuels in the instant action. On December 8, 2008, Samuels moved to dismiss the Petition to Foreclose on the basis that "Hatch did not allege that [Samuels] owns or has an interest in the property[.]" Defendant's Appendix ("State Proceedings") (docket no. 3-2), at 109.[2] In its resistance, Hatch argued that Samuels's dismissal would be improper because Samuels was an indispensible party to the State Proceedings. On January 14, 2009, Hatch voluntarily dismissed Samuels from the State Proceedings without prejudice.

On February 10, 2009, Samuels and Alta Vista filed a joint "Motion to Compel Arbitration and Stay Litigation Pending Arbitration" ("Motion to Compel Arbitration"). State Proceedings at 95. In the Motion to Compel Arbitration, Samuels argued that it had entered into a subcontract with Hatch that provided for the arbitration of claims arising out of the subcontract. Samuels argued that some of Hatch's claims in the State Proceedings

---

[1] The court hereafter refers to all proceedings in case no. EQCV020017 as the "State Proceedings."

[2] Hatch attached to the Motion all docket filings in the State Proceedings as of December 23, 2009. The court takes judicial notice of these State Proceedings. *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (recognizing that court "may take judicial notice of judicial opinions and public records").

were subject to arbitration. Samuels also stated that it made an arbitration demand but Hatch refused arbitration. On February 11, 2009, Judge Chris Foy of the State Court entered an "Order for Hearing on Motion to Compel Arbitration." *Id.* at 94. Judge Foy noted that Hatch previously dismissed Samuels from the State Proceedings, and, therefore, he would "treat the [Motion to Compel Arbitration] as brought solely by Alta Vista[.]"[3] *Id.*

On February 19, 2009, Samuels filed a "Motion to Intervene" in the State Proceedings. State Proceedings at 69. In the Motion to Intervene, Samuels argued that it had an interest in the subcontract that was the premise of Hatch's mechanic's lien claim. Samuels argued that the mechanic's lien was improper because Hatch failed to substantially perform the subcontract. Samuels argued that intervention was appropriate because it would be "responsible to Alta Vista for any amounts recovered by Hatch on its mechanic's lien claim." *Id.* Samuels also attached to the Motion to Intervene a "Motion to Compel Arbitration and Stay Litigation Pending Arbitration." *Id.* at 73. Samuels argued that it had a "valid, enforceable, and irrevocable provision to arbitrate disputes in the Subcontract [with Hatch]." *Id.* at 83. Samuels argued that Hatch "should be compelled to submit to arbitration to determine the balance due under the Subcontract." *Id.*

Also on February 19, 2009, Alta Vista filed an "Amended and Substituted Motion to Stay Litigation Pending Arbitration" ("Amended Motion to Stay"). *Id.* at 85. Alta Vista argued that "[l]itigation between the subcontractor Hatch and the owner Alta Vista cannot be resolved until the balance due to Hatch on the Subcontract is determined." *Id.* at 88. Accordingly, Alta Vista asked the State Court to "stay the litigation of Hatch's mechanic's lien pending the arbitration between Hatch and [Samuels]." *Id.* The parties

---

[3] It appears from the State Proceedings that Samuels may not have received notice of its dismissal from the State Proceedings until February 11, 2009, thus explaining its filing of the Motion to Compel Arbitration *after* Hatch dismissed it from the State Proceedings. State Proceedings at 89.

fully briefed Alta Vista's Amended Motion to Stay and Samuels's Motion to Intervene.

The State Court never ruled on Samuels's Motion to Intervene, Samuels's Motion to Compel Arbitration and Stay Litigation Pending Arbitration or Alta Vista's Amended Motion to Stay because Hatch agreed to stay the State Proceedings pending arbitration. On May 28, 2009, Alta Vista filed a "Supplement to its Motion to Stay Litigation Pending Arbitration" ("Supplement"). *Id.* at 48. In the Supplement, Alta Vista stated that Hatch agreed to stay the litigation in the State Proceedings. On June 5, 2009, Judge Stephen P. Carroll of the State Court entered an "Order Continuing Trial." *Id.* at 47. In the Order Continuing Trial, Judge Carroll stated that the State Proceedings were stayed and trial in the State Proceedings was continued. Judge Carroll directed the parties to submit a status report regarding the arbitration proceedings within 180 days.

### D.  Arbitration

On August, 12 and 13, 2009, Hatch and Samuels participated in an arbitration proceeding in American Arbitration Association Case No. 58 110 00007 09 ("Arbitration"). Samuels was the claimant in the Arbitration and Hatch was the respondent. Samuels sought "an award stating that the maximum amount due [to Hatch] was $89,101, that Samuels was entitled to certain offsets against that amount, that Hatch's mechanic's lien is invalid, that Hatch failed to complete the contract and that Hatch's performance delayed Samuels, causing damages." Arbitration Award ("Award"), Complaint Exhibit 1 (docket no. 1-1), at 1. Alta Vista was not a party to the Arbitration.

On October 1, 2009, Arbitrator John A. Templer, Jr., entered an Award in the Arbitration. Arbitrator Templer found that Hatch's mechanic's lien was valid and that Hatch was "due the sum of $120,280.89 in the mechanics' lien action." *Id.* at 11. However, because Hatch did not file a counterclaim in the Arbitration, the Award "[did] NOT grant an affirmative award of any funds to Hatch." *Id.* (emphasis in original). Rather, the Award "simply state[d] what [Arbitrator Templer] believe[d] [Samuels] owed

to Hatch." *Id.*

### E. Subsequent State Proceedings

On October 26, 2009, Hatch withdrew its resistance to Samuels's Motion to Intervene in the State Proceedings. State Proceedings at 44. That same date, Hatch filed a "Confirmation of Award" in the State Proceedings. *Id.* at 31. Hatch asked the State Court to confirm the Award and enter judgment in its favor and against Samuels for $120,280.89, plus interest and costs.

On November 6, 2009, Samuels filed a "Voluntary Dismissal of its Petition to Intervene" in which it also sought to withdraw its Motion to Compel Arbitration and Stay Litigation Pending Arbitration.[4] *Id.* at 27. That same date, Alta Vista withdrew its Amended Motion to Stay and filed a "Resistance to [Hatch's] Confirmation of Award." *Id.* at 16, 25. On November 17, 2009, Hatch filed a "Reply to [Alta Vista's] Resistance to [Hatch's] Confirmation of Award." *Id.* at 4. That same date, Hatch filed an "Objection to [Samuels's] Voluntary Dismissal of Petition to Intervene." *Id.* at 10. Hatch argued that it "receive[d] affirmative relief in the arbitration award, and Samuels cannot avoid responsibility for that relief by simply dismissing its petition to intervene after all issues involving it have been 'tried' in arbitration." *Id.* at 14.

### F. Instant Action

On November 4, 2009, Samuels filed a Complaint (docket no. 1). In the Complaint, Samuels asks the court to vacate the Award. Samuels argues that the Arbitrator exceeded his power, failed to determine the issues fully and misapplied Iowa law. On January 4, 2010, Hatch filed the Motion. On January 21, 2010, Samuels filed a Resistance (docket no. 6). On February 1, 2010, Hatch filed a Reply (docket no. 7).

---

[4] Although filed on November 6, 2009, Samuels's voluntary dismissal of its Petition to Intervene and Motion to Compel Arbitration and Stay Litigation Pending Arbitration were dated November 4, 2009—the same date it filed the Complaint in the instant action.

### III.  SUBJECT MATTER JURISDICTION

The court has diversity jurisdiction over this case because complete diversity exists and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.").  Samuels is a citizen of Wisconsin.  Hatch is a citizen of Iowa.  The court is satisfied that subject matter jurisdiction exists.

### IV.  ANALYSIS

In the Motion, Hatch asks the court to dismiss or stay the instant action.  Hatch argues that abstention is appropriate because of the pending State Proceedings.  Samuels argues that abstention is inappropriate because the instant action and the State Proceedings are not parallel proceedings.  Samuels also argues that, even if the proceedings are parallel, the circumstances do not warrant abstention.  First, the court discusses the legal principles that govern abstention due to pending state proceedings.  Then, the court considers whether the State Proceedings and the instant action are parallel proceedings.  Finally, the court shall discuss whether abstention is warranted.

### A.  **Colorado River** *Abstention*

In *Colorado River Water Conservation Dist. v. United States*, the Supreme Court outlined the principles that govern federal abstention due to pending state court proceedings.  424 U.S. 800 (1976).  The Court explained that, "[g]enerally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction[.]"  *Id*. at 817 (citation and quotation marks omitted).  This rule "stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them."  *Id*.  Accordingly, "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are

considerably more limited than the circumstances appropriate for abstention." *Id.* at 818. The Court identified considerations a federal court should weigh when confronted with a request to abstain due to pending state proceedings:

> It has been held, for example, that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts . . . . In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums.

*Id.* (citations omitted). The Court cautioned that "[n]o one factor is necessarily determinative[.]" *Id.* "A carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Id.* at 818-19. "Only the clearest of justifications will warrant dismissal." *Id.* at 819. In *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, the Court explained two additional factors that should be addressed under *Colorado River* abstention: whether federal or state law controls the dispute and the adequacy of the state forum to protect the federal plaintiff's rights. 460 U.S. 1, 23-27 (1983).

The Eighth Circuit Court of Appeals recently addressed *Colorado River* abstention in *Fru-Con Constr. Corp. v. Controlled Air, Inc.*, 574 F.3d 527 (8th Cir. 2009). In *Fru-Con*, the Eighth Circuit Court of Appeals explained that, "[a]s a threshold matter, . . . there must be pending parallel state and federal court proceedings before *Colorado River* is implicated." *Fru-Con*, 574 F.3d at 535 (citing *In re Burns & Wilcox, Ltd.*, 54 F.3d 475, 477 (8th Cir. 1995), *limited on other grounds by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 710-11 (1996)). If there are pending parallel state and federal proceedings, a federal court may divest itself of jurisdiction "only when . . . exceptional circumstances warrant abstention." *Id.* at 534 (citing *Colorado River*, 424 U.S. at 817-818). The Eighth Circuit Court of Appeals delineated "[s]ix non-exhaustive factors that have been developed

8

to determine whether . . . exceptional circumstances warrant abstention." *Id.* at 534. The court must consider:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*Id.* (quoting *Mountain Pure, LLC v. Turner Holdings, LLC*, 439 F.3d 920, 926 (8th Cir. 2006).

These factors "are not intended to be exhaustive, nor are they to be mechanically applied." *Federated Rural Elec. Ins. Corp. v. Ark. Elec. Coops., Inc.*, 48 F.3d 294, 297 (8th Cir. 1995). Instead, they should be "pragmatically applied in order to advance the 'clear federal policy' of avoiding piecemeal adjudication." *Id.* (quoting *Moses H. Cone*, 460 U.S. at 16). The Eighth Circuit Court of Appeals explained the proper application of the factors as follows:

> In examining these factors, "the balance [is] heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16. And: we emphasize that our task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction. *Moses H. Cone*, 460 U.S. at 25-26 (emphasis in original).

*Id.*

### B. Parallel Proceedings

"A parallel state court proceeding is a necessary prerequisite to the use of the *Colorado River* factors." *In re Burns & Wilcox, Ltd.*, 54 F.3d at 477. Accordingly, the court must first decide whether the State Proceedings and the instant action are "parallel" proceedings.

In *Fru-Con*, the Eighth Circuit Court of Appeals observed that "[p]recedent establishing a comprehensive definition of 'parallel proceedings' for purposes of *Colorado River* abstention is scarce in this circuit." *Fru-Con*, 574 F.3d at 535. "Although the [Eighth Circuit Court of Appeals] has decided several cases involving such proceedings, none has discussed the specific elements of parallelism." *Id.* "The prevailing view is that state and federal proceedings are parallel for purposes of *Colorado River* abstention when substantially similar parties are litigating substantially similar issues in *both* state and federal court." *Id.* (emphasis in original). However, the Eighth Circuit Court of Appeals concluded that "[t]his circuit requires more precision" than other circuits. *Id.*

> The pendency of a state claim based on the same general facts or subject matter as a federal claim and involving the same parties is not alone sufficient. Rather, a substantial similarity must exist between the state and federal proceedings, which similarity occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court. This analysis focuses on matters as they currently exist, not as they could be modified. Moreover, in keeping with the Supreme Court's charge to abstain in limited instances only, jurisdiction must be exercised if there is any doubt as to the parallel nature of the state and federal proceedings.

*Id.*

### 1. Samuels's arguments

Samuels argues that the instant action and the State Proceedings are not "parallel" for several related reasons. First, Samuels argues that it is not a party to the State

Proceedings. Samuels asserts that the Eighth Circuit Court of Appeals requires identical parties for proceedings to be considered parallel. Accordingly, Samuels argues that, if it is not a party to the State Proceedings, the proceedings cannot be parallel. Similarly, Samuels argues that the proceedings are not parallel because the State Proceedings "cannot resolve [Samuels's] claim." Resistance at 8. That is, Samuels contends that the State Proceedings cannot resolve its claims because it is not a party to the State Proceedings. Samuels also argues that the State Proceedings are "inadequate to trigger abstention" because the State Proceedings are currently stayed. *Id.* at 9.

### 2. *Hatch's arguments*

Hatch objects to Samuels's argument that the Eighth Circuit Court of Appeals requires "identical" parties for state and federal proceedings to be parallel. Hatch also argues that, although the State Court never granted Samuels's Motion to Intervene in the State Proceedings, Samuels attained the status of "intervenor by implication." Reply at 1. Hatch submits that Samuels attained this status due to its conduct in the State Proceedings and because the State Court treated Samuels as if it were a party. Finally, Hatch argues that the stay in the State Proceedings expired when it filed the "Confirmation of Award" on October 26, 2009. Since that date, Hatch contends that all of the parties involved with the State Proceedings, including Samuels, have filed motions or objections in the State Proceedings.

### 3. *Application*

The court disagrees with Samuels's assertion that "proceedings are not parallel if the parties are not identical." Resistance at 5. The Eighth Circuit Court of Appeals never held that proceedings are parallel for purposes of *Colorado River* abstention only if the parties in the state and federal proceedings are *identical*. In fact, "the parties and issues in *Colorado River* itself were not identical to the 'parallel' state-court proceeding[.]" *Chase Brexton Health Serv., Inc. v. Maryland*, 411 F.3d 457, 464 (4th Cir. 2005). While

the identity of the parties is certainly a relevant factor in determining whether proceedings are parallel, the Eighth Circuit Court of Appeals never concluded that the parties must be identical.

Other circuit courts have rejected the argument that proceedings are not parallel unless the parties are identical. *See, e.g., Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004) ("[T]he requirement is that the parties be *substantially* the same—not completely identical.") (emphasis in original); *Bates v. Van Buren Twp.*, 122 F. App'x. 803, 806 (6th Cir. 2004) ("There is also no requirement that the parties in the state court proceedings be identical to those in the federal case."); *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989) (rejecting claim that proceedings were not parallel because parties were not identical and stating that "exact parallelism" is not required); *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 306 (3d Cir. 2006) ("We have never required complete identity of parties for abstention."). The court finds that proceedings may be "parallel" for purposes of *Colorado River* abstention even when the parties to the state and federal proceedings are not completely identical.

### a. State Court treated Samuels as a party

The State Court took somewhat inconsistent actions with regard to Samuels's status as a party in the State Proceedings. For example, on February 10, 2009, Samuels and Alta Vista filed their joint Motion to Compel Arbitration. The next day, the State Court set a hearing on the Motion to Compel Arbitration. However, the State Court noted that Hatch had previously dismissed Samuels from the State Proceedings and, therefore, the State Court would "treat the [Motion to Compel Arbitration] as brought solely by Alta Vista[.]" State Proceedings at 94. The State Court also noted that Samuels was "no longer a party in [the State Proceedings]." *Id.* However, on June 5, 2009, after both Alta Vista and Samuels asked the State Court to stay the State Proceedings pending arbitration, the State Court entered the "Order Continuing Trial." *Id.* at 47. In the order, the State Court

identified Samuels as a defendant and stated that "*Defendants* have submitted to the Court a Motion to Stay Litigation Pending Arbitration." *Id.* (emphasis added). Hatch argues that the State Court's "plural reference to 'Defendants' could only have referred to Alta Vista and Samuels, as the only other defendant, First State Bank, had not filed any such motion." Reply at 2. The fact that the State Court stayed the State Proceedings pending arbitration supports a finding that the State Court implicitly granted Samuels's Motion to Intervene. This is particularly true because Samuels specifically requested that relief. *See Roach v. Churchman*, 457 F.2d 1101, 1104 (8th Cir. 1972) ("We note that the district court afforded American Home relief on its resistance to the motion for a consent judgment, without formally naming American Home as a party. We deem this action of the district court equivalent to authorizing American Home to intervene in the action[.]"); *see also Public Citizen v. Liggett Group,* Inc., 858 F.2d 775, 784 (1st Cir. 1988) ("[T]he district did afford relief to Public Citizen as if it were a proper party to the case, thus implicitly granting it intervenor status."); *In re Beef Industry Antitrust Litig.*, 589 F.2d 786, 789 (5th Cir. 1979) (assuming that the district court implicitly authorized an unnamed party to intervene because "the district court's acts might be considered equivalent to authorizing intervention"); *MCW, Inc. v. Badbusinessbureau.com, L.L.C.*, No. Civ.A.3:02-CV-2727-G, 2004 WL 833595, at *4 (N.D. Tex. April 19, 2004) (stating that "even if a party is improperly named in a proceeding, or not named at all, it is not thereby precluded from becoming a *de facto* intervenor" and finding that party "became a *de facto* intervening party to these proceedings when it participated in the Rule 12(b)(5) motion"); *Minton v. St. Bernard Parish School Board*, No. 85-1258, 1987 WL 13895 (E.D. La. July 13, 1987) ("[A]ffording relief to a non-party is, for all practical purposes, the equivalent of authorizing intervention."). Accordingly, the court finds that the State Court's grant of a stay in the State Proceedings—relief Samuels sought—supports a conclusion that the State Court implicitly allowed Samuels to intervene in the State Proceedings.

### b.    Samuels's conduct suggests it is a party

In addition to the State Court treating Samuels as a party to the State Proceedings, it appears that Samuels also considered itself a party to the State Proceedings. Specifically, Hatch points to Samuels's "Voluntary Dismissal of its Petition to Intervene," in which Samuels sought to dismiss its Petition to Intervene "[p]ursuant to Iowa Rule of Civil Procedure 1.943." State Proceedings at 27. Iowa Rule of Civil Procedure 1.943 provides that "[a] *party* may, without order of court, dismiss *that party's* own . . . petition of intervention, at any time up until ten days before the trial is scheduled to begin." Iowa R. Civ. P. 1.943 (emphasis added). Hatch argues that, "[i]f Samuels had considered itself a non-party, it would have simply withdrawn its *motion* to intervene." Reply at 2. Again, the court finds that Samuels's actions in the State Proceedings arguably indicate that it considered itself a party.[5]

### c.    Federal plaintiff need not always be a party to State Proceedings

Even if Samuels was not technically a party to the State Proceedings, this fact alone would not preclude the court from finding that the proceedings are parallel. *See, e.g., Whitten Ranch, Inc. v. Premier Alfalfa, Inc.*, No. 4:09CV3007, 2009 WL 1844482, at *3 (D. Neb. June 18, 2009) (staying federal action under *Colorado River* despite fact that federal plaintiff was not a party to the state proceedings because the federal plaintiff's "interests [were] congruent to those of . . . the state court defendant"); *Farmers Auto. Ins. Ass'n v. Donahue*, No. 08-0565-CV-W-ODS, 2008 WL 4426139, at *3, n.5 (W.D. Mo. Sept. 26, 2008) (stating that abstention under *Colorado River* was appropriate where

---

[5] The Award also reflects Abritrator Templer's finding that Samuels is a party to the State Proceedings. The Award states that Samuels "is a party to the [A]rbitration and the [State Proceedings]." Award at 10. Arbitrator Templer noted that Samuels "was originally named a defendant, then was dismissed, then *re-entered the case as an intervenor*." *Id.* at n.12 (emphasis added).

federal plaintiff was not a party to the state proceeding because federal plaintiff and state court party had "allied interests and [were] in privity with one another"); *Beardmore v. Am. Summit Fin. Holdings, LLC*, No. Civ.01-948 (DWF/SRN), 2001 WL 1586785, at *6 (D. Minn. Dec. 10, 2001) (abstaining pursuant to *Colorado River* despite court's recognition that the plaintiff in the federal action was not a party to the parallel state proceedings because the "the state court's determination of the agreement's validity will inevitably impact [the federal plaintiff]").  Samuels's interests are implicated in the State Proceedings because, as Samuels noted, it "will be responsible to Alta Vista for any amounts recovered by Hatch on its mechanic's lien claim."  State Proceedings at 70.  The relatedness of Samuels's and Alta Vista's interests is highlighted by the fact that they are represented in the State Proceedings by the same counsel.  *See Whitten Ranch, Inc.*, 2009 WL 1844482, at *2 ("The similarity of the interests of Mr. Whitten and Plaintiff is further evidenced by the fact that they are represented by the same law firm.") (citing *Health Care & Retirement Corp. of Am. v. Heartland Home Care, Inc.*, 324 F. Supp. 2d 1202, 1204 (D. Kan. 2004)).

### d.  Impact of "stayed" State Proceedings

Samuels also argues the proceedings are not parallel because the State Proceedings are purportedly stayed and therefore "inadequate to trigger abstention."  Resistance at 9.  Samuels contends that "[a] state court's 'passive reservation of enforcement jurisdiction is [not] adequate to trigger abstention, and we are wary about extending jurisdiction from an adjudication of eligibility for arbitration into jurisdiction over the arbitration itself.'"  Resistance at 9 (quoting *IFC Interconsult*, 438 F.3d at 306-07).  However, in *IFC Interconsult*, the Third Circuit Court of Appeals noted that the state court "discontinued the [state proceedings] and expressly noted that it could be reopened only by written order upon request by a formal motion."  438 F.3d at 306.  In such circumstances, the Third Circuit found that the proceedings were not "parallel" because the state court relinquished

"on-going jurisdiction." *Id.*

Here, the State Court's actions in the State Proceedings differ from those in *IFC Interconsult*. In the State Proceedings, the State Court ordered that trial be "continued" and directed the parties to "report to the Court with respect to the status of the arbitration proceedings" within 180 days. State Proceedings at 47. Hatch effectively "report[ed] to the [State Court] with respect to the status of the arbitration proceedings" by filing the Confirmation of Award and a copy of the Award with the State Court on October 26, 2009. *Id.* Further, all participants to the State Proceedings, including Samuels, filed pleadings *after* Hatch filed the Confirmation of Award.

### e. *Governing law*

Samuels argues that the State Proceedings and the instant action are not parallel because "the instant matter is governed by federal law, specifically, the Federal Arbitration Act (FAA)." Resistance at 10. Samuels contends that the contract between it and Hatch "was across state lines and was between corporations of different states." *Id.* at 11. Accordingly, Samuels submits that "the FAA is the governing law." *Id.* This factor is traditionally considered as part of the "exceptional circumstances" analysis of the *Colorado River* factors—not in deciding if parallel proceedings exist.[6] *See, e.g., Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 879 (8th Cir. 2002) ("We note particularly that federal law controls most of the appellants' claims, and that this factor is a 'major consideration' against abstention.") (citing *Moses H. Cone*, 460 U.S. at 26). However, Samuels contends that the Eighth Circuit Court of Appeals announced a "new rule" in *Fru-Con*—that proceedings are not "parallel" for *Colorado River* purposes if federal law governs the dispute. Resistance at 9. The court does not read *Fru-Con* to impose a categorical bar to finding parallel proceedings when the action is governed by federal law.

---

[6] The court notes that Samuels also raises this argument as one of the relevant "exceptional circumstances" factors under *Colorado River*.

16

*See Fru-Con*, 574 F.3d at 534 (including "whether state or federal law controls" as an "exceptional circumstances" factor, which can only be considered *after* a determination that parallel proceedings exist).

Even assuming that *Fru-Con* established such a rule, federal law does not govern the parties' dispute. It is true that the FAA "'create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" *Donaldson Co., Inc. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009) (quoting *Moses H. Cone*, 460 U.S. at 24). "[T]he federal substantive law of arbitrability governs whether the litigants' dispute falls within the scope of the arbitration agreement." *Id.* (citing *Daisy Mfg. Co, Inc. v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir. 1994)). Accordingly, the FAA governs the issue of whether the parties' dispute is subject to their contract's arbitration provision. However, the FAA grants concurrent jurisdiction to federal and state courts and thus expressly contemplates the State Court as an adequate forum for adjudication. *See Myer v. Americo Life, Inc.*, 469 F.3d 731, 734 (8th Cir. 2006) (recognizing concurrent jurisdiction under the FAA and stating that "there is no question that the Texas state court had jurisdiction to confirm the arbitration award").

Further, Iowa law governs the parties' underlying contractual dispute. The parties' contract provides that it "will be governed by the law of the state in which the Project is located[.]" State Proceedings at 140. In the Complaint, Samuels alleges that the Award "exhibits a manifest disregard of law and fails to draw its essence from the [contract] *because Iowa law enforces entire agreement clauses*, the Arbitrator clearly and plainly erred in applying the law, and the Arbitrator had knowledge of the applicable law." Complaint at ¶ 20 (emphasis added). Thus, the parties' contract and Samuels's own allegations make clear that Iowa's substantive law would apply regardless of the forum.

### f. *Issues are parallel*

The issues presented in the State Proceedings and the instant action also support a

finding that the proceedings are parallel. In the State Proceedings, Hatch seeks $120,280.89 for its work on the Project. Hatch asked the State Court to "enter judgment against [Alta Vista] and [Samuels.]" State Proceedings at 123. Hatch further requested that "such judgment be established as a lien against the land[.]" *Id.*

In the Award, Arbitrator Templer found that Hatch's mechanic's lien was valid. The Award also states that it "shall constitute a determination of the amount due Hatch from Samuels both for purposes of this [A]rbitration and the [State Proceedings]." Award at 10. The Award states that Hatch "is due the sum of $120,280.89 in the [State Proceedings]." *Id.* at 11. Hatch then sought confirmation of the Award in the State Proceedings. In the instant action, Samuels asks the court to vacate the Award because it contends that Arbitrator Templer "clearly and plainly erred in applying the law[.]" Complaint at ¶ 20. The State Court will necessarily confront this issue when resolving Hatch's Confirmation of Award.

### 4. *Summary*

For all of the above reasons, the court finds that "there is a substantial likelihood that the [State Proceedings] will fully dispose of the claims presented in the federal court." *Fru-Con*, 574 F.3d at 535. Accordingly, the State Proceedings and the instant action are parallel for purposes of *Colorado River*. The court now turns to consider whether exceptional circumstances exist to warrant abstention.

### C. Colorado River *Factors*

### 1. *Jurisdiction over a res*

Hatch argues that the "res is the arbitration award" and that the State Court has established jurisdiction over the Award. Samuels's Brief in Support of Motion ("Pl. Brief") (docket no. 3-1), at 13. Due to the potential for conflicting decisions regarding the confirmation of an arbitration award, several courts have found this factor to weigh in favor of abstention, even though the state court did not technically have jurisdiction over

property. *See Vulcan Chem. Tech., Inc. v. Barker*, 297 F.3d 332, 341 (4th Cir. 2002) (finding that state court's jurisdiction over arbitration award applied in favor of abstention); *Hinman v. Fujitsi Software Corp.*, No. C05-03509 MJJ, 2006 WL 358073 (N.D. Cal. Feb. 13, 2006) ("The state court has exercised juridsdiction over a *res*—namely, the July 31, 2005 Arbitration Award."); *Nitgen Co. v. Secugen Corp.*, No. C 04-02912 JW, 2004 WL 2303929, at *5 (N.D. Cal. Oct. 12, 2004) (noting that, although arbitration award is not "a piece of property," the potential for conflicting decisions caused this factor to weigh in favor of abstention).

For purposes of *Colorado River*, this factor typically asks whether one court has jurisdiction over a particular piece of property, such that the action is in rem. *See Federated Rural Elec., Ins. Corp.*, 48 F.3d at 297 (finding factor neutral because action was "an in personam action that does not involve a res"). The instant action—an action to vacate an arbitration award—is an in personam action. *Myer*, 469 F.3d at 735 n.10 (8th Cir. 2006). Accordingly, the court finds that this factor receives no weight in the exceptional circumstances analysis.

### 2. *Inconvenience of the federal forum*

The State Court and this court are in close proximity and neither forum presents an inconvenience to the parties. The parties do not suggest that this factor weighs heavily in either direction. The court finds that this factor is neutral and receives no weight in the exceptional circumstances determination.

### 3. *Threat of piecemeal litigation*

Hatch argues that the threat of piecemeal litigation weighs heavily in favor of abstention because two courts could potentially render inconsistent rulings on the validity of the Award. Samuels reiterates many of its arguments regarding its status as a party to the State Proceedings, and ultimately argues that this factor "is neutral and does not favor abstention." Resistance at 14. However, Samuels argues that, even if this factor "is not

neutral, it can receive only minimal weight." *Id.*

The Eighth Circuit Court of Appeals has made clear that "this is the predominant factor" in the exceptional circumstances analysis.[7] *Federated Rural Elec. Ins. Corp.*, 48 F.3d at 297 (citing *Moses H. Cone*, 460 U.S. at 16). This is so because the policies underlying *Colorado River* abstention are the "'conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* at 298 (quoting *Colorado River*, 424 U.S. at 817). In the State Proceedings, Samuels sought to intervene and compel arbitration. The State Court stayed the State Proceedings to allow for arbitration. The Arbitration resulted in the Award, which Hatch then asked the State Court to confirm. Samuels then commenced the instant action and asks the court to vacate the Award. The threat of conflicting decisions and piecemeal litigation regarding the Award is very real. Accordingly, the court finds that this factor weighs in favor of abstention.

### 4. Priority

"'[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.'" *Id.* (quoting *Moses H. Cone*, 460 U.S. at 21). This factor "is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone*, 460 U.S. at 21.

The State Proceedings commenced on October 21, 2008, when Hatch filed the Petition to Foreclose. Samuels filed the Complaint in the instant action more than one year

---

[7] Samuels's claim that this factor should receive "minimal" weight is true only "where the relevant law *required* piecemeal resolution and the federal court issue was 'easily severable from the merits of the underlying disputes.'" *Gov't Employees Ins. Co. v. Simon*, 917 F.2d 1144, 1148 (8th Cir. 1990) (quoting *Moses H. Cone*, 460 U.S. at 20-21) (emphasis added). Nothing requires the piecemeal resolution of whether the Award should be confirmed or vacated, and nothing suggests that the issue raised in the instant action is easily severable from the merits of the underlying dispute. Samuels asks the court to vacate the Award because Arbitrator Templer allegedly erred in applying Iowa law. Thus, the issue raised in the instant action is completely intertwined with the merits of the parties' underlying dispute.

later—on November 4, 2009. The parties in the State Proceedings include Alta Vista, the owner of the land on which the Project was being constructed, and First State Bank, which has a security interest in the land at issue. The State Court has dealt with issues related to dismissal of parties, intervention, motions to compel arbitration and a stay of the State Proceedings pending the Arbitration. Hatch also moved the State Court to confirm the Award prior to Samuels filing the Complaint.

Samuels argues that this factor "must focus on the progress related to the confirmation or vacatur of the [Award], not the progress related to the mechanic's lien." Resistance at 15. Thus, Samuels argues the actions have progressed similarly because Hatch moved to confirm the Award and Samuels seeks to vacate the Award. In *Mountain Pure*, the Eighth Circuit Court of Appeals considered a party's tort claims in isolation, rather than with the progress made by the state court on remaining contract claims. 439 F.3d at 927. By doing so, the Eighth Circuit Court of Appeals found the state and federal actions "stand on relatively equal footing" because neither court had addressed the merits of the tort claims. *Id.* This reasoning is inapplicable to the instant action. The Award relates directly to the parties' underlying contractual dispute. There are no other causes of action raised by Samuels here that were not addressed in the Arbitration. In fact, Samuels asks the court to vacate the Award precisely because it believes the Arbitrator misapplied Iowa contract law as it applies to their dispute. The court finds that this factor weighs in favor of abstention.

### 5. *Controlling law*

Samuels argues that, "because the contract involved interstate commerce, the FAA provides the governing law." Resistance at 16. Samuels contends that this factor should be a "major consideration" against abstention because "[t]he FAA is federal substantive law that is the rule of decision in the instant matter." *Id.* Hatch argues that "both state and federal courts have concurrent jurisdiction under the FAA [and that] Iowa and federal

law both favor arbitration and erect formidable barriers to vacation of an award." Pl. Brief at 14. Hatch also argues that Iowa law controls the parties' underlying dispute.

The parties agreed that their contract would be governed by Iowa law. The Complaint makes clear that Samuels believes Arbitrator Templer erred in interpreting Iowa contract law. Thus, both forums would apply the substantive law of Iowa, as provided in the contract. Further, state and federal courts have concurrent jurisdiction under the FAA, which makes the rule of decision less significant. *Vulcan Chem. Tech.*, 297 F.3d at 343. However, "it is only in 'rare circumstances' that the presence of state law issues will favor abstention." *Gov't Employees Ins. Co.*, 917 F.2d at 1149 (quoting *Moses H. Cone*, 460 U.S. at 26). This case does not appear to involve "'complex questions of state law that a state court might be best suited to resolve.'" *Id.* (quoting *Noonan S., Inc. v. County of Volusia*, 841 F.2d 380, 382 (11th Cir. 1988)). Accordingly, this factor receives no weight in the exceptional circumstances determination.

### 6.      *Protection of Samuels's rights*

Samuels does not suggest that litigation in the State Court would inadequately protect its rights. Likewise, Hatch does not argue that litigation in the federal forum is inadequate to protect its rights. "The fact that both forums are adequate to protect the parties' rights merely renders this factor neutral on the question of whether the federal action should be dismissed." *Id.* at 1149. In other words, "'[t]his factor will only weigh in favor [of] or against dismissal when one of the forums is *inadequate* to protect a party's rights.'" *Id.* (quoting *Noonan S., Inc.*, 841 F.2d at 383) (emphasis in *Noonan*). Accordingly, this factor is neutral and receives no weight in the exceptional circumstances determination.

### 7.      *Additional considerations*

In addition to the six factors identified in *Fru-Con*, Hatch asks the court to consider an additional factor: "whether the federal court action is an attempt to forum shop or to

avoid adverse rulings by the [S]tate [C]ourt." Pl. Brief at 15. Samuels argues that the Eighth Circuit Court of Appeals has not recognized this additional factor and, therefore, asks the court to confine its inquiry to the factors discussed above.

The Eighth Circuit Court of Appeals acknowledged that the *Colorado River/Moses H. Cone* factors "are not intended to be exhaustive, nor are they to be mechanically applied." *Federated Rural Elec. Ins. Corp.*, 48 F.3d at 297. Rather, "they are to be pragmatically applied in order to advance the 'clear federal policy' of avoiding piecemeal adjudication." *Id.* (quoting *Moses H. Cone*, 460 U.S. at 16). Further, the Eighth Circuit Court of Appeals has considered "whether the federal or state suit is filed . . . for a vexatious, reactive or tactical reason." *Id.* at 299 (opining that party's choice of federal forum may have been motivated by forum shopping) (citing *Moses H. Cone*, 460 U.S. at 17; *Nakash v. Marciano*, 882 F.2d 1411, 1416-17 (9th Cir. 1989)). Other courts have similarly weighed these considerations. *See, e.g., Nakash*, 882 F.2d at 1417 ("[T]he final factor to consider is whether the second suit by Nakash is an attempt to forum shop or avoid adverse rulings by the state court."). Accordingly, the court deems it appropriate to weigh this additional concern. *See Bank of Okla., N.A. v. Tharaldson Motels II, Inc.*, No. 1:09-cv-030, 2009 WL 4071887, at *7 (D.N.D. Nov. 25, 2009) (considering "forum shopping" as a seventh factor in *Colorado River* analysis).

Initially, Samuels appeared content to litigate this dispute in the State Court. This is evident, at least in part, from its attempt to intervene in the State Proceedings and compel Hatch to arbitrate. Ultimately, the State Court granted a stay so the parties could arbitrate the matter. However, after receiving the Award, Samuels sought to extricate itself from the State Proceedings and bring its dispute with Hatch to this court. Courts have looked unfavorably upon similar tactics. *See Vulcan Chem. Tech., Inc.*, 297 F.3d at 343 ("This case was gladly litigated by both parties in California and gladly arbitrated there before an agreed-upon arbitrator . . . . When Vulcan lost the arbitration and was

ordered to pay a large award, it undertook a strategy to obtain a second opinion on the same issue from the district court."); *NitGen*, 2004 WL 2303929, at *6 ("The Court agrees that where a party changes court systems the issue of forum shopping is raised . . . . NitGen has apparently become dissatisfied with the state court and now seeks to try its hand in federal court."); *Hinman*, 2006 WL 358073, at *3 ("[I]t appears that Petitioner is seeking a more favorable ruling from this Court than Petitioner received in state court."). While the precise procedural background of these cases varies to some extent from the instant action, the underlying rationale is equally applicable here. The court finds that it is appropriate to consider the possibility that Samuels filed the instant action in an effort to avoid potentially adverse rulings in the State Court. This factor weighs in favor of abstention.

### D.  Summary

The court finds that the State Proceedings and the instant action are parallel for purposes of *Colorado River* abstention. The court also finds that the relevant factors establish exceptional circumstances that warrant abstention. The threat of piecemeal litigation and the progress of the State Proceedings relative to the instant action weigh heavily in favor of abstention. In the State Proceedings, Hatch asked the State Court to confirm the Award. In the instant action, Samuels asks the court to vacate the Award. Thus, the potential for inconsistent judgments regarding the Award supports abstention. Further, the possibility that Samuels commenced the instant action to avoid an adverse arbitration award from an arbitration that it actively pursued weighs in favor of abstention.

### E.  Dismissal or Stay

In the Motion, Hatch asks the court to dismiss the instant action pursuant to *Colorado River*. In its Reply, however, Hatch clarifies that it "request[s] a stay in the event that the court finds that abstention, but not dismissal is warranted." Reply at 5.

"When a federal court moves beyond abstention to dismissal . . . considerably

weightier reasons have to be in place." *Fru-Con*, 574 F.3d at 534 n.7 (citing *Colorado River*, 424 U.S. at 818). "A stay is preferred to dismissal in cases where there is a possibility that the parties will return to federal court." *Cedar Rapids Cellular Tel.*, 280 F.3d at 882 (citing *Fuller v. Ulland*, 76 F.3d 957, 960-61 (8th Cir. 1996)); *see also Selmon v. Portsmouth Drive Condo. Ass'n*, 89 F.3d 406, 409 (7th Cir. 1996) (reiterating its prior holdings that a stay, rather than dismissal, is the "appropriate procedural mechanism for a district court to employ in deferring to a parallel state court proceeding under the *Colorado River* doctrine"). The court is compelled to operate out of an abundance of caution due to its "weighty obligation to exercise federal jurisdiction." *Ins. Co. of State of Pa v. Syntex Corp.*, 964 F.2d 829, 834 (8th Cir. 1992). The court finds that a stay of the instant action is appropriate pending final resolution of the State Proceedings. *See Wolfson v. Mut. Ben. Life Ins. Co.*, 51 F.3d 141, 147 (8th Cir. 1995) (affirming stay under *Buford* and *Colorado River* abstention doctrines and suggesting that dismissing the federal ERISA claim would have been erroneous), *limited on other grounds by Quakenbush*, 517 U.S. at 721. Accordingly, the court will not consider Hatch's alternative arguments for dismissal at this time.

## V. CONCLUSION

For the foregoing reasons, it is **HEREBY ORDERED**:

(1)     The Motion (docket no. 3) is **GRANTED IN PART**;

(2)     All proceedings in this case are **STAYED** pending final resolution of the State Proceedings, that is, *Hatch Grading & Contracting, Inc. v. Alta Vista Properties, LC , et al.*, No. EQCV020017 (Butler County Dist. Ct. 2008);

(3)     Defendant Hatch Grading & Contracting, Inc.'s alternative argument in the Motion regarding dismissal is **DENIED AS MOOT WITH LEAVE TO RENEW AS NECESSARY** in the event the court lifts the stay ordered herein;

(4) The parties shall file a joint status report on the State Proceedings on August 1, 2010; and

(5) The parties shall notify the court immediately upon the conclusion of the State Proceedings.

**IT IS SO ORDERED.**

**DATED** this 23rd day of March, 2010.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA